FILED

Mark P. Meuser, SBN 231335
Meuser Law Group, Inc
PO Box 5412
Walnut Creek, CA 94596
Telephone: (415) 577-2850
Facsimile: (925) 262-4656
mark@meuser-law.com

10 AUG 17 PM 3: 50

CLERK U S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

Attorney for
Michelle Gilstrap

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE GILSTRAP, an individual<br><br>    Plaintiff,<br><br>Vs.<br><br>UNITED AIR LINES, INC., a Delaware Corporation, and DOES 1 through 20, inclusive<br><br>    Defendants | Case No.:<br><br>**CV10 6131-JEM**<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>BY FAX<br><br>1. **Negligent Misrepresentation**<br>2. **Breach of Duty of a Common Carrier**<br>3. **Negligence**<br>4. **Intentional Infliction of Emotional Distress**<br>5. **Negligent Infliction of Emotional Distress**<br>6. **Violation of Air Carrier Access Act**<br>7. **Violation of Americans with Disabilities Act**<br><br>**Demand for Jury Trial** |

1

Complaint

**PARTIES**

1. Plaintiff Michelle Gilstrap is, and at all times referenced herein was, a natural person domiciled in the state of California.

2. Defendant United Airlines is a corporation incorporated under the laws of Delaware and having its principal place of business in Illinois, and is authorized to do business in the State of California.

**JURISDICTION**

3. This Court has jurisdiction over the claims for violation of the Air Carrier Access Act and the Americans with Disabilities Act under 28 U.S.C. § 1331 (federal question jurisdiction).

4. This court has jurisdiction over all common law claims herein asserted under 28 U.S.C. § 1367 (supplemental jurisdiction), as these claims share a common nucleus of operative fact with the federal claims herein asserted.

5. Additionally, this Court has jurisdiction over all claims herein asserted under 28 U.S.C. § 1332 (diversity of citizenship).

**GENERAL ALLEGATIONS**

6. Plaintiff Michelle Gilstrap (hereafter "Gilstrap") is, and at all times referenced herein was, a resident of Burbank, California.

7. United Airlines (hereafter "United") is, and at all times referenced herein was, a corporation headquartered in the State of Illinois, with one of its major hubs in Los Angeles, California.

8. On or about July 17, 2008, Gilstrap purchased a plane ticket from United for a trip to Calgary, Canada. When she purchased the ticket, Gilstrap requested wheelchair assistance at the airport because of a collapsed disk in her back, one replaced knee, one knee needing replacement and osteoarthritis, all of which combined make her disabled.

9.  On August 12, 2008, Gilstrap arrived at the Los Angeles International Airport. There was no curbside check-in as there had been in the past, and there was no wheelchair available.

10. Upon inquiry, a United agent told Gilstrap that she would have to stand in line at the ticket counter to request a wheelchair. Gilstrap told the agent she was unable to stand in line because of her physical condition. A friend who was traveling with Gilstrap was finally able to locate a wheelchair to assist Gilstrap to her plane.

11. Upon her arrival in Calgary, the wheelchair—which she had requested when she purchased her ticket from United—was not waiting for Gilstrap at the gate. She was forced to use her cane and have a friend carry her luggage.

12. On August 17, 2008, Gilstrap arrived at the Calgary airport for her flight to Denver, where she would get a connecting flight to continue to her destination. The taxi driver left Gilstrap and another handicapped friend outside on the curb. Once again, there were no wheelchairs in sight.

13. Gilstrap had to walk, with the assistance of her cane, halfway down the airport terminal before locating an agent who could bring a wheelchair for her friend who had lost part of her leg from diabetes. When the agent got to the door, she asked where Gilstrap was going. Gilstrap told the agent her friend was outside. The agent refused to step out of the airport building, forcing the disabled Gilstrap to push the wheelchair to her waiting friend.

14. Gilstrap was physically unable to push her friend in the wheelchair while managing all of their items of luggage, and thus they were both stranded on the curb.

15. Gilstrap finally prevailed upon an utter stranger to assist them, by wheeling her friend to her gate and assisting Gilstrap to the United ticket counter.

16. Gilstrap approached a United agent and asked him to check her in. The agent told her to wait in line. She explained she was disabled and could not stand

3

Complaint

in the fifty-person line.  The agent then told Gilstrap to give him her passport and ticket, and he left.

17. When the agent returned a few minutes later, he handed Gilstrap her ticket and told her that she was now on a different flight, leaving four hours later than the one she originally booked to fly. Gilstrap asked why. The agent told Gilstrap that because she refused to stand in line, this was what she got. Gilstrap said she had a connecting flight in Denver and couldn't possibly wait four hours. The agent told her if she didn't like it, then she should step into the office behind her.

18. Not having any other option, Gilstrap walked to the partially open office door, which said "United" on it. She couldn't see anyone so she stepped in. An agent came up from the far corner, brusquely asking her, "What are you doing here?" Gilstrap stated that the United ticket agent had told her to go to this office and ask for help. The United employee yelled and swore at Gilstrap, telling her to get out, and slammed the door in her face.

19. Gilstrap waited until her original flight was about to leave and then approached the United ticket counter once again, explaining her situation to a different agent. That agent said she could get Gilstrap on standby for the next flight, which arrived in Chicago instead of Denver, so she would miss her connecting flight to Milwaukee. Gilstrap asked for a wheelchair and the agent said she could get one.

20. When Gilstrap arrived in Chicago, she asked where her wheelchair was, and the United flight attendants said she would have to ask the gate attendant. Gilstrap had to walk up the ramp using her cane and carrying her own luggage. Her leg began to go numb. There was a wheelchair at the gate, but the United agent refused to let Gilstrap use it, insisting since there was no wheelchair note on Gilstrap's ticket that she had to call for a wheelchair. It took between thirty and forty-five minutes for the chair to arrive.

Complaint

21. On August 20, 2008, Gilstrap arrived at the Milwaukee airport and again had to convince a United agent that she needed a wheelchair – when she had originally requested one when purchasing her ticket.

22. Upon arrival in Denver, she once again had to specifically request a wheelchair, which took forty-five minutes to arrive, causing her to almost miss her connecting flight to Los Angeles.

23. A United agent assisted Gilstrap to board her flight and told her he would be there to help her when the flight landed.  Upon landing, Gilstrap waited until the all the passengers deplaned, but no agent came to her assistance. She finally was able to get a flight attendant to help her gather her luggage, but when she got to the front of the plane there was no wheelchair assistant waiting.

24. The United agents had failed to notify the assistant that he was needed, and he had left.  The agents called him back, and Gilstrap had to wait once again.

25. After her grueling trip, Gilstrap was so exhausted and suffering with such intense pain that she had to miss work the following day and have an epidural.

26. Because Gilstrap was already disabled, the amount of time it has taken for her to recover from this ordeal of flying with United is considerably longer and more physically taxing than would be the case for someone with less severe disabilities. Gilstrap is continuing to seek medical treatment for the physical conditions sustained and aggravated on her August 2008 flights with United.

27. In December 2009, Mrs. Gilstrap learned that her mother was in critical condition, and so Ms. Gilstrap booked a trip to Wisconsin to visit her.

28. Once again, Mrs. Gilstrap specifically requested a wheelchair.

Complaint

29. Ms. Gilstrap was scheduled to fly from Burbank, California to Denver, Colorado, where she would then get on a connecting flight to Madison, Wisconsin.

30. On December 26, 2009 United cancelled all flights into Madison due to inclement weather.  This included Ms. Gilstrap's flight, scheduled to leave Denver at 3:37 PM.

31. Ms. Gilstrap talked with the United agent and explained her predicament; she was disabled and was now apparently going to be stranded in Denver with no way to get around except with the help of others.   The United agent transferred Ms. Gilstrap to a Mesa Airlines flight which was still scheduled to fly to Madison, departing at around 8 PM.

32. The Mesa flight was delayed and finally began boarding around 10:30 PM, and did not land in Madison until almost 1 AM, December 27, 2009.

33. Upon arriving, in Madison there was no wheelchair.  Ms. Gilstrap walked off the plane with the aid of a crutch and asked the agent at the gate where her wheelchair was.  The agent said that none had been requested.  The United agent did not make note of Ms. Gilstrap's disability when she transferred Ms. Gilstrap to the Mesa flight.

34. Frustrated, Ms. Gilstrap asked the agent to get her a wheelchair.  The agent instead said that Ms. Gilstrap should walk down to the baggage claim.  The agent said that she would not look for a wheelchair until everyone disembarked the airplane, and was not sure that she could find a wheelchair if she looked.  Neither alternative was a good one for Ms. Gilstrap.  She was tired and in severe pain but needed to meet her sister who was coming to pick her up, and so she limped down to the baggage claim.

///

///

6

Complaint

# FIRST CAUSE OF ACTION
## *NEGLIGENT MISREPRESENTATION*
### *By Gilstrap against United and Does 1-20*

35. Gilstrap realleges, and incorporates by reference, paragraphs 1 through 34 of this Complaint.

36. When Gilstrap purchased her airline ticket from United, they led her to assume that if she requested a wheelchair, they would have an agent ready to assist her upon the arrival and departure of each flight.

37. During the course of Gilstrap's travels she was never met with a wheelchair and always had to make great personal effort to locate one.

38. Gilstrap relied on United's promise of wheelchair assistance during her travels.

39. United's misrepresentation caused Gilstrap great distress as well as intense physical pain – the extent of her injuries is yet unknown, and she continues to seek medical relief.

40. Gilstrap requests compensation for the physical and emotional pain and suffering she has suffered and continues to endure. She also seeks reimbursement for the medical bills she has incurred, as well as all other compensation the court deems just and proper.

# SECOND CAUSE OF ACTION
## *BREACH OF DUTY OF A COMMON CARRIER TOWARD DISABLED OR INFIRM PASSENGERS*
### *By Gilstrap against United and Does 1-20*

41. Gilstrap realleges, and incorporates by reference, paragraphs 1 through 40 of this Complaint.

42. When United failed to provide the wheelchair assistance that the disabled Gilstrap previously requested, United egregiously violated the duty of common carriers toward disabled passengers, a duty which binds them to

7

Complaint

provide as much additional care as is reasonably necessary to insure the passenger's safety.

43. United did not provide the additional care that they had originally agreed to make available, and only gave cursory assistance to Gilstrap when she made great efforts to secure it.

44. Though it was clearly indicated on Gilstrap's ticket, none of United's agents voluntarily provided a wheelchair or the additional care and assistance Gilstrap needed

45. None of United's agents acted as though Gilstrap's physical safety was of importance. She was consistently asked to stand in long lines, walk lengthy distances, and carry her own luggage, when she was obviously unable to do so.

46. Gilstrap requests compensation for the physical and emotional pain and suffering she has, and continues to endure. She also seeks reimbursement for the medical bills she has incurred, as well as all other compensation the court deems just and proper.

## THIRD CAUSE OF ACTION
### *NEGLIGENCE*
*By Gilstrap against United and Does 1-20*

47. Gilstrap realleges, and incorporates by reference, paragraphs 1 through 46 of this Complaint.

48. Throughout Gilstrap's travels United was negligent in its failure to provide her with adequate assistance.

49. Uniteds treatment of Mrs. Gilstrap fell below the standard of reasonable care for an airline agent.

50. This failure to note the request for wheelchair assistance caused great hardship and suffering to Gilstrap, forcing her to continually request

8

Complaint

assistance, to carry her own luggage, and to wait extended periods of time for wheelchairs to be brought to her.

51. Throughout her traveling with United, Gilstrap constantly came in contact with United agents who did not take reasonable care to insure she was not harmed. While it is obvious that Gilstrap is disabled, many United agents ordered her to stand in long lines, walk long distances and carry her own luggage, all things a that reasonably careful agent would never ask of a disabled customer.

52. While Gilstrap was already disabled before traveling with United, United's actions have compounded her condition.

53. Gilstrap requests compensation for the physical and emotional pain and suffering she has suffered, and continues to endure. She also seeks reimbursement for the medical bills she has incurred, as well as all other compensation the court deems just and proper.

## FOURTH CAUSE OF ACTION
### *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*
*By Gilstrap against United and Does 1-20*

54. Gilstrap realleges, and incorporates by reference, paragraphs 1 through 53 of this Complaint.

55. On August 17, 2008, Gilstrap approached the ticket agent in Calgary asking to be checked in. Without considering Gilstrap's obviously handicapped condition, he brusquely insisted that she wait in a very long line. When she said she was unable to do so, the agent gave Gilstrap a boarding pass for a flight four hours later. This forced her to miss her connecting flight to Denver and caused her great mental and emotional anguish.

56. Traveling is a time of great vulnerability for a disabled person who must rely on the assistance and accommodation of others.

57. The agent's conduct toward Gilstrap was outrageous.

9

58. When Gilstrap sought help in the United office, she was met with rudeness and hostility. She was chased out of the office, sworn at, and had the door slammed in her face by a United employee.

59. Throughout her several days of travel with United, Gilstrap was constantly pressed to her physical and emotional limits by United agents who insisted she stand in long lines, walk to meet her wheelchairs and carry her own luggage.

60. Traveling in and of itself can be stressful, but for Gilstrap, this trip became a nightmare because of United's intimidating, offensive and outrageous actions.

61. Gilstrap requests compensation for the emotional pain and suffering she has endured, as well as all other compensation the court deems just and proper.

## FIFTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
*By Gilstrap against United and Does 1-20*

62. Gilstrap realleges, and incorporates by reference, paragraphs 1 through 61 of this Complaint.

63. During her three days of travel with them, the United agents repeatedly failed to take the necessary precautions to insure Gilstrap was protected from harm.

64. Even though Gilstrap's ticket was marked that she had requested wheelchair assistance, none of the United agents provided a wheelchair for her until Gilstrap had specifically asked them. They did not act as reasonable agents would have in those circumstances to insure that a disabled customer would be shielded from acute emotional distress.

65. On August 17, 2008 when the United agent in Calgary callously changed Gilstrap's ticket to a flight four hours later, he did not make a reasonable

Complaint

effort to protect her from emotional harm which would obviously come from missing her connecting flights.

66. Each one of the United agents who told Gilstrap to stand in line to request a wheelchair were grossly negligent, failing to properly assess her physical condition and care for her accordingly.

67. Gilstrap requests compensation for the emotional pain and suffering she has endured, as well as all other compensation the court deems just and proper.

## SIXTH CAUSE OF ACTION
### *VIOLATION OF AIR CARRIER ACCESS ACT*
### *By Gilstrap against United and Does 1-20*

68. Gilstrap realleges, and incorporates by reference, paragraphs 1 through 67 of this Complaint.

69. The Department of Transportation has promulgated rules, 14 C.F.R. § 382, governing airlines for the accommodation of disabled individuals pursuant to the Air Carrier Access Act (ACAA), 49 U.S.C. §§ 41702, 47105, and 41712.

70. Subpart 39 of the DOT regulations provides that carriers shall ensure that individuals with a disability are to be provided with assistance in enplaning, deplaning, and in making flight connections and transportation between gates.  14 C.F.R. § 382.39(a).

71. United failed to comply with this requirement by repeatedly failing to provide wheelchair assistance.

72. Gilstrap requests compensation for the emotional pain and suffering she has endured, as well as all other compensation the court deems just and proper.

///

///

///

Complaint

## SEVENTH CAUSE OF ACTION
*VIOLATION OF AMERICANS WITH DISABILITIES ACT*
*By Gilstrap against United and Does 1-20*

73. Gilstrap realleges, and incorporates by reference, paragraphs 1 through 63 of this Complaint.

74. The Americans with Disabilities Act (ADA) prohibits discrimination on the basis of disability in places of public accommodation. 42 U.S.C. § 12182(a). A recent case has persuasively reasoned that the ADA is applicable in airport terminals.  Thomas v. Northwest Airlines Corp., 2008 U.S. Dist. LEXIS 66864 (2008).

75. United represented that it offered wheelchairs to those disabled persons who requested them.

76. However, the special program that United offered was not in fact performed. Ms. Gilstrap, who had relied on the offered service in making her travel plans, arrived at airport after airport only to discover that there were no wheelchairs provided for her use.

77. As a result, her trips became a series of painful ordeals.  This was a violation of the ADA.

78. Gilstrap requests compensation for the emotional pain and suffering she has endured, as well as all other compensation the court deems just and proper.

WHEREFORE, Plaintiff prays:

1. For compensatory damages according to proof and prejudgment interest thereon to the extent allowable by law;

2. For exemplary and punitive damages according to proof;

3. For costs of suit; and

4. For such other and further relief as the court may deem proper.

Respectfully submitted this 17th day of August, 2010.

Meuser Law Group, Inc.

Mark P. Meuser, SBN 231335
PO Box 5412
Walnut Creek, CA 94596
Telephone: (415) 577-2850

13

Complaint

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Michelle Gilstrap

**DEFENDANTS**
United Air Lines, Inc.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Mark P. Meuser, PO Box 5412, Walnut Creek, CA 94596

Attorneys (If Known)

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

---

**V. REQUESTED IN COMPLAINT:**    **JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No      ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

---

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC 1331

---

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☒ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

---

**FOR OFFICE USE ONLY:**    Case Number: _____.

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☑Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
  ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
  ☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
  ☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Illinois |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
  **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, California | Calgary, Canada; Denver Colorado; Chicago, Illinois; Madison Wiscosin |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____*Mark T. Pla____*_____  Date August 17, 2010

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |