Richard G. Grotch, Esq. – SBN 127713
**CODDINGTON, HICKS & DANFORTH**
**A Professional Corporation, Lawyers**
555 Twin Dolphin Drive, Suite 300
Redwood City, CA  94065-2133
Telephone: (650) 592-5400
Facsimile:  (650) 592-5027

**ATTORNEYS FOR** Defendant
UNITED AIR LINES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MICHELLE GILSTRAP, an individual,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>UNITED AIR LINES, INC., a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>　　　　　　Defendants. | Case No.   CV 10-06131-BRO(FMOx)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [FRCP 12(b)(6)]<br><br>Date:  October 21, 2013<br>Time:  1:30 p.m.<br>Courtroom: 14 - Spring St. Floor<br>Honorable Beverly Reid O'Connell |

1

**TABLE OF CONTENTS**

2   I.      INTRODUCTION ................................................................................ 1

3   II.     STATEMENT OF THE CASE ............................................................ 2

4           A.      The August 2008 Flights ................................................. 3

5           B.      The December 26, 2009 Flights ....................................... 5

6   III.    PROCEDURAL POSTURE ................................................................ 5

7   IV.     LEGAL ARGUMENT ........................................................................ 6

8           A.      Plaintiff's First Cause of Action Fails to State Facts Sufficient to State An
                    Actionable Claim for Negligence *Per Se* Because There Is No Such
9                   Cause of Action ................................................................ 6

10          B.      Plaintiff's Second Cause of Action Fails to State Facts Sufficient to State
                    An Actionable Claim for Negligent Misrepresentation ............................. 7
11

12          C.      Plaintiff's Fifth Cause of Action Fails to State Facts Sufficient to State An
                    Actionable Claim for Intentional Infliction of Emotional Distress ..................... 9
13

14          D.      Plaintiff's Sixth Cause of Action Fails to State Facts Sufficient to State An
                    Actionable Claim for Negligent Infliction of Emotional Distress ...................... 12
15

16  V.      CONCLUSION ................................................................................ 13

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*B.L.M. v. Sabo* & *Deitsch*
    55 Cal.App.4th 823 (1997)……………………………………….......8

4

*California Servo Station* & *Auto. Repair Ass'n v. Am. Home Assur. Co.*
    62 Cal.App.4th 1166 (1998) …………………………………………7

5

6

*Cochran v. Cochran*
    65 Cal.App.4th 488 (1998) ……………………………………….......10

7

*Cole v. Fair Oaks Fire Protection Dist.*
    43 Cal.3d 148 (1987) …………………………………………..................10

8

9

*Fox v. Pollack*
    181 Cal.App.3d 954 (1986) ……………………………………….......8

10

*Gilstrap v. United Air Lines, Inc.*
    709 F.3d 995 (9th Cir. 2013) …………………………………….2, 6, 7, 11

11

12

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.*
    100 F.Supp.2d 1086 (C.D. Cal. 1999) …………………………………8

13

*Girard v. Ball,*
    125 Cal.App.3d 772 (1981) ……………………………………...…11

14

15

*Hoff v. Vacaville Unified Sch. Dist.*
    19 Cal.4th 925 (1998) …………………………………………..............7

16

*Huggins v. Longs Drug Stores California, Inc.*
    6 Cal.4th 124 (1993) ……………………………………………12

17

18

*Lazar v. Superior Court*
    12 Cal.4th 631 (1996) …………………………………………...8

19

20

*Molien v. Kaiser Foundation Hospitals,*
    27 Cal.3d 916 (1980) ……………………………………………..12

21

*Neilson v. Union Bank of California*
    290 F.Supp.2d 1101 (C.D. Cal. 2003) …………………………………8

22

23

*People v. Kinder Morgan Energy Partners, L.P.*
    569 F.Supp.2d 1073 (S.D. Cal. 2008) …………………………………7

24

*Potter v. Firestone Tire* & *Rubber Co.*
    6 Cal.4th 965 (1993) ……………………………………………12

25

26

*Quiroz v. Seventh Avenue Center*
    140 Cal.App.4th 1256 (2006) …………………………………………7

27

*Schneider v. TRW, Inc.,*
    938 F.2d 986 (9th Cir. 1991) …………………………………………11

28

ii

*Sierra-Bay Fed. Land Bank Ass'n v. Super. Ct.*
 227 Cal.App.3d 318 (1991) …………………………………………………..7

*Swartz v. KPMG LLP*
 476 F.3d 756 (9th Cir. 2007) …………………………………………………8

*Tarmann v. State Farm Mut. Auto. Ins. Co.*
 2 Cal.App.4th 153 (1991) …………………………………………………8

*Thomas v. Douglas*
 877 F.2d 1428 (9th Cir. 1989)…………………………………………………..11

*Trerice v. Blue Cross of Cal.*
 209 Cal.App.3d 878 (1989)…………………………………………………...9

*Vees v. Ciba-Geigy Corp. USA*
 317 F.3d 1097 (9th Cir. 2003) …………………………………………………8

*Wallis v. Princess Cruises, Inc.*
 306 F.3d 827 (9th Cir. 2002) …………………………………………………...10

*Yurick v. Superior Court*
 209 Cal.App.3d 1116 (1989) …………………………………………………...10

*U.S. Concord Inc. v. Hams Graphics Corp.*
 757 F.Supp. 1053 (N.D. Cal. 1991) …………………………………………………..8

**Codes**

Cal. Evid. Code §669(a)(1) …………………………………………………..7

**Treatises**

*Prosser* & *Keeton on Torts* (5th ed. 1984) § 12, pp. 59-60 …………………………………………10

Restatement (Second) of Torts, § 46, com.d, p. 73 ………………………………………10

1    Defendant UNITED AIR LINES, INC., now known as United Airlines, Inc.

2    ("United"), respectfully submits the following memorandum of points and authorities in

3    support of its motion to dismiss the following causes of action contained in plaintiff

4    MICHELLE GILSTRAP's first amended complaint for damages ("FAC"):

5         a.     Cause of action one for negligence *per se;*

6         b.     Cause of action two for negligent misrepresentation;

7         c.     Cause of action five for intentional inflection of emotional distress; and

8         d.     Cause of action six for negligent inflection of emotional distress.

9    These causes of action, and each of them, are subject to dismissal under Rule 12(b)(6)

10   of the Federal Rules of Civil Procedure on the ground that plaintiff fails to state facts sufficient

11   to state a claim for relief.

12   **I.    INTRODUCTION**

13        Plaintiff's FAC seemingly arises from her dissatisfaction with the service she received in

14   2008 and 2009 as a disabled airline passenger as she passed through several airports in the U.S.

15   and one airport in Canada. In particular, plaintiff expresses dissatisfaction with her claimed

16   inability to obtain wheelchairs at the various airports.

17        On November 10, 2010, United responded to the FAC by filing a motion to dismiss

18   (Doc. 17) and a motion to strike (Doc. 18). The motion to dismiss argued that plaintiff's state

19   law claims were preempted by federal law, and that her federal law claims were otherwise legally

20   unsustainable. The motion to dismiss also included the arguments set forth below - arguments

21   by which United challenges the FAC based upon plaintiff's failure to state actionable claims.

22   Together with the motion to dismiss, United also filed a motion to strike certain allegations

23   from the FAC.

24        Agreeing with United that the state law claims were preempted and that the federal

25   claims were not viable, this Court (Nguyen, J.) granted the motion to dismiss on those grounds.

26   Doc. 25. "Because the Court conclude[d] Plaintiff's claims [we]re preempted, the Court [did]

27   not address Defendant's other arguments in favor of dismissal of [plaintiff's] claims." *Id,* p. 9,

28   fn.4. For the same reason, it held that United's motion to strike was moot. *Id.,* p. 11.

1

On February 17, 2011, plaintiff filed an appeal of this Court's dismissal order.  In an opinion filed March 12, 2013, the Ninth Circuit affirmed in part, reversed in part and remanded the matter to this Court. 709 F.3d 995 (9th Cir. 2013).  Specifically, for the reasons explained in its opinion, the court of appeals affirmed this Court's dismissal of plaintiff's claim under the Americans With Disabilities Act ("the ADA"), and reversed this Court's dismissal of her state-law claims. *Id.* at 1012. The case was remanded to this Court for further proceedings consistent with the appellate court's opinion. *Id.*

In remanding the case, the court of appeals noted that this Court had "evaluated only whether the state-law claims were preempted." *Id.* The Ninth Circuit, "therefore, express[ed] no opinion on whether Gilstrap's state-law claims would survive dismissal on other grounds." *Id.*

Against this backdrop, United now reiterates the challenges to the FAC that it previously raised in its motions to strike and to dismiss - arguments that were never considered by this Court or by the court of appeals.

First, because there is no "cause of action" for negligence *per se,* the first cause of action is unavailing; it is, moreover, unnecessary. Second, we show that plaintiff has not alleged - and cannot allege - facts sufficient to state a cause of action for negligent misrepresentation, intentional infliction of emotional distress, or negligent infliction of emotional distress.

For these reasons, which we detail below, United's motion to dismiss should be granted.

## II.     STATEMENT OF THE CASE

In her FAC, plaintiff complains about apparently unsatisfactory experiences she had while traveling through several different airports as a disabled airline passenger on four different dates in 2008 - August 12, August 17, August 20 and one in 2009 - December 26.

According to the FAC, plaintiff has a collapsed disk in her back, knee troubles, as well as osteoarthritis, "all of which combined make her disabled."  FAC at ¶ 8.  In the main, her allegations seem to relate to delays and difficulties she experienced when attempting to get a wheelchair at the various airports to which her travels took her, including Los Angeles International Airport ("LAX"), Calgary International Airport, Chicago O'Hare International Airport, General Mitchell International Airport (Milwaukee) and Denver International Airport.

2

### A.    The August 2008 Flights

Plaintiff maintains that on or about July 17, 2008, she purchased a plane ticket from United and requested wheelchair assistance. *Id.* at ¶8. (It bears mentioning that while plaintiff alleges that she "purchased a plane ticket from United," she does not allege – and cannot in good faith aver - that the ticket she bought was for travel only on flights operated by United.) Though plaintiff fails to identify the actual, operating air carriers, a reader can discern from the FAC that her ticketed itinerary would take her from LAX to Calgary; from Calgary to Milwaukee; and from Milwaukee to LAX.

Plaintiff alleges that on August 12, 2008, when she arrived at some unidentified location at LAX, she found curbside check-in facilities were no longer available and thus that there were no available wheelchairs at the curb. *Id.* at ¶9. Though she was told by an unnamed "United agent" that she would need to wait in a line at the ticket counter, her friend was able to locate a wheelchair for her. *Id.* at ¶10. Upon arrival in Calgary, the wheelchair she had requested was not waiting for her at the gate, but her friend assisted her.[1]  *Id.* at ¶11.

Plaintiff goes on to allege that on August 17, 2008, she took a taxi to the airport in Calgary.  At the location where the taxi driver left her off, there apparently were no wheelchairs. *Id.* at ¶12.  On this occasion, she was with "another handicapped friend."  *Id.* Plaintiff claims she had to walk into the airport terminal to find an unidentified "agent" who provided a wheelchair for plaintiff's friend. 2 *Id.* at ¶13. Plaintiff complains, in particular, that the "agent" confined herself to the terminal building and would not leave the terminal with the wheelchair for plaintiff's friend.[2]   *Id.*  Nonetheless, with the assistance of another passenger, plaintiff and her friend made their way to the airline ticket counter inside the terminal. *Id.* at ¶15. According to the plaintiff, a number of events then transpired at the United ticket counter in Calgary.

---

[1] It is entirely unclear what efforts, if any, were made to locate a wheelchair in Calgary or even whether plaintiff did obtain a wheelchair there, even if not at the gate immediately upon disembarkation. For purposes of this motion, the answers to tense questions are ultimately immaterial, however.

[2] There is no allegation about whether plaintiff required a wheelchair on this occasion or whether she asked anyone at the airport for a wheelchair for her own use.

*First,* she was asked to wait in an "extended line of other customers," though she protested she was unable to do so. *Id.* at ¶16.

*Second,* she was asked to provide her passport and ticket. *Id*

*Third,* after leaving for "a few minutes," the unidentified agent returned and advised plaintiff that she had been put on a different flight - one that left four hours later than her original flight and would take her to Chicago rather than Denver, where she would make her onward connection. *Id* at ¶17. Plaintiff avers she was told that this routing change was made in order to punish her for refusing to stand in line. *Id*

*Fourth,* plaintiff contends she was directed to a United office with a partially open door to take up the matter of her re-routing. *Id.* at ¶¶ 17-18. There, she was allegedly treated brusquely. *Id.* at ¶18. According to plaintiff, the person in the office treated her rudely, asked her to leave and slammed the door. *Id.*

Plaintiff seems to allege that she flew from Calgary to Chicago. *Id.* at ¶¶19-20. But, before doing so, she "asked for a wheelchair and the [unidentified] agent said she could get one." *Id.* Upon arrival in Chicago, certain unnamed "United flight attendants" directed plaintiff to a gate agent for assistance with a wheelchair. *Id.* at ¶20. Plaintiff avers that she walked from the plane to the gate room without a wheelchair and then, "[a]fter much insistence," had to wait 30-45 minutes for her wheelchair to arrive. *Id*

Plaintiff was scheduled to return to LAX on August 20, 2008. *Id.* at ¶21. She maintains that when she arrived at the airport in Milwaukee, she "had to convince a[n unidentified] United agent that she needed a wheelchair," though she had requested one when she bought her ticket. *Id.* When she made her connection in Denver, plaintiff "had to specifically request a wheelchair" and had to wait about 45 minutes to get it. *Id.* at ¶ 22.

According to plaintiff, in Denver, an unidentified, male "United agent" assisted her in boarding her flight bound for LAX; he allegedly "told her he would be there to help her when the flight landed." *Id.* at ¶ 23. However, initially upon landing at LAX, she was not assisted. *Id.* With the help of a flight attendant, she gathered her luggage but then had to wait an unspecified amount of time for a wheelchair and a wheelchair attendant. *Id.* at ¶24.

4

Plaintiff contends the grueling trip exhausted her and necessitated that she take a day off of work and "have an epidural." *Id.* at ¶25. Plaintiff asserts that even now, she continues to seek medical treatment for unspecified "physical conditions sustained and aggravated on her August 2008 flights." *Id.* at ¶26.

**B.    The December 26, 2009 Flights**

Sometime in December 2009, plaintiff "booked flights with United to travel to Wisconsin" to visit her critically ill mother. *Id.* at ¶27. Plaintiff requested that United provide her with a wheelchair at the airport. *Id.* at ¶28. However, plaintiff alleges that due to poor weather, United cancelled all flights into Madison, Wisconsin, her intended, ticketed destination. *Id.* at ¶30.  Concerned that she would be stranded in Denver, plaintiff prevailed upon a "United agent" to have her accommodated on a Mesa Airlines flight to Madison. *Id.* at ¶31.

The Mesa Airlines flight was delayed, however, and when plaintiff arrived in Madison, "there was no wheelchair." *Id.* at ¶¶ 32-33. According to an unidentified agent, no wheelchair had been requested. *Id.* at ¶33. This unidentified "agent," who worked for an unidentified entity (presumably Mesa), allegedly told plaintiff to walk to the baggage claim area and explained that she would not look for a wheelchair until everyone had disembarked the aircraft. *Id.* at ¶34. Frustrated, tired and in pain, plaintiff "limped painfully down the concourse to the baggage claim" area. *Id.*

**III.    PROCEDURAL POSTURE**

More than two years after the August 12, 2008 events about which, *inter alia,* plaintiff complains, she filed suit against United. Doc. 1. Before serving United with the summons and complaint, plaintiff revised her complaint by filing the FAC. Doc. 9. In her FAC, plaintiff alleges the following causes of action against United:

    1.    Negligence Per Se: Violation of Air Carrier Access Act

    2.    Negligent Misrepresentation

    3.    Breach of Duty of Common Carrier

    4.    Negligence

5.      Intentional Infliction of Emotional Distress

6.      Negligent Infliction of Emotional Distress

7.      Violation of the ADA

On November 10, 2010, United filed a motion to dismiss plaintiff's claims in their entirety pursuant to Fed. R. Civ. Proc. 12(b)(6) and a motion to strike pursuant to Fed. R Civ. Proc. 12(f).  Docs. 17-18. This Court granted United's motion to dismiss on January 21, 2011, finding that plaintiff's state law tort claims were both conflict and field preempted by federal law.  Doc. 25.  This Court also held that the ADA does not apply to airport terminals. *Id.* Having ruled on the motion to dismiss, the Court denied as moot United's motion to strike. *Id.*

Plaintiff appealed the dismissal order. The matter was fully briefed by the parties and argued on May 9, 2012. The Ninth Circuit issued its opinion on March 12, 2013, affirming this Court's dismissal of the ADA claim and reversing as to the finding that plaintiff's state law tort claims were preempted by the ACAA.  Doc. 28.

The Ninth Circuit expressed no opinion as to whether plaintiff had alleged facts sufficient to state actionable claims under California law. Nor did it express any view on the issues raised by United in its prior motion to strike but never considered by this Court.

Describing the FAC in this case, and "[t]aking [it] as true and in the light most favorable to Gilstrap," the Ninth Circuit explained that "[plaintiff's] most serious injury was pain, and much of the alleged injury was due to insensitive treatment."  709 F.3d at 1010-1011. Notably, the court of appeals questioned "whether a court applying California law will hold that state law provides a tort remedy for such largely dignitary injuries, rooted in important, but statutorily grounded, anti-discrimination norms." *Id* at 1011.

## IV.   LEGAL ARGUMENT

### A.      Plaintiff's First Cause of Action Fails to State Facts Sufficient to State An Actionable Claim for Negligence *Per Se* Because There Is No Such Cause of Action

In California, negligence *per se* is "a presumption of negligence [that] arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the

6

statute." *See, e.g., Hoff v. Vacaville Unified Sch. Dist.,* 19 Cal.4th 925, 80 Cal.Rptr.2d 811 (1998) (citations omitted). But, "it is the tort of negligence, and not the violation of the statute itself, which entitles a plaintiff to recover civil damages." *California Servo Station* & *Auto. Repair Ass'n v. Am. Home Assur. Co.,* 62 Cal.App.4th 1166, 73 Cal.Rptr.2d 182, 190 (1998) (quoting *Sierra-Bay Fed. Land Bank Ass'n v. Super. Ct., 227* Cal.App.3d 318, 277 Cal.Rptr. 753,761 (1991)).

Negligence *per se* is simply a codified evidentiary doctrine or, as the Ninth Circuit said in this case, it is a "California evidentiary rule" expressed in Cal. Evid. Code §669(a)(1). *Gilstrap, supra,* 709 F.3d at 998. "[T]he doctrine of negligence per se does not establish tort liability." *Quiroz v. Seventh Avenue Center,* 140 Cal.App.4th 1256, 1285, 45 Cal.Rptr.3d 222, 244 (2006). Thus, "to apply negligence *per se* is not to state an independent cause of action" because "[t]he doctrine does not provide a private right of action for violation of a statute." *Id., see also People v. Kinder Morgan Energy Partners, L.P.,* 569 F.Supp.2d 1073, 1087 (S.D. Cal. 2008).

Because plaintiff has purported to state a claim for relief in her fourth cause of action, and because the Ninth Circuit has said she may try to rely on the ACAA in order to establish a standard of care, this first cause of action is duplicative and unnecessary. But because there is no cause of action for negligence per se, it is also improper. Plaintiff cannot state a claim for which relief may be granted pursuant to a "cause of action" that does not exist.

### B.   Plaintiff's Second Cause of Action Fails to State Facts Sufficient to State An Actionable Claim for Negligent Misrepresentation

In her second cause of action in the FAC, plaintiff purports to state a claim for negligent misrepresentation. But that claim is insufficiently pled and subject to dismissal.

As this Court has observed:

> '[n]egligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages.'"

///

///

1   *Neilson v. Union Bank of California,* 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003), citing *B.L.M. v.*

2   *Sabo* & *Deitsch,* 55 Cal.App.4th 823, 834,64 Cal.Rptr.2d 335 (1997), in turn quoting *Fox v.*

3   *Pollack,* 181 Cal.App.3d 954, 962, 226 Cal. Rptr. 532 (1986)).

4          Moreover, as in California state courts, in our federal courts when it comes to fraud

5   claims, there is a heightened pleading standard.[3]   "It is well-established in the Ninth Circuit that

6   both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity

7   requirements. *Neilson v. Union Bank, supra,* 290 F.Supp.2d at 1141, citing *Glen Holly Entertainment,*

8   *Inc. v. Tektronix, Inc.,* 100 F.Supp.2d 1086, 1093 (C.D. Cal. 1999) ("Claims for fraud and

9   negligent misrepresentation must meet the heightened pleading requirements of Rule 9(b)");

10  *U.S. Concord Inc. v. Hams Graphics Corp.,* 757 F.Supp. 1053, 1058 (N.D. Cal. 1991) ("Defendant

11  further asserts that the negligent misrepresentation claim fails to satisfy Rule 9(b)'s particularity

12  requirements. The point is well-taken. Since the claim is based upon the same flawed allegations

13  of misrepresentation as the fraud count, it, too, fails for lack of specificity").

14         In order to satisfy the heightened pleading requirements for a fraud claim, the plaintiff

15  must proffer specific factual allegations, including "an account of the time, place, and specific

16  content of the false representations as well as the identities of the parties to the

17  misrepresentations." *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007); *see Vees v. Ciba-*

18  *Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be

19  accompanied by 'the who, what, when, where, and how' of the misconduct charged").

20         Moreover, in a case such as the instant one, involving a claim of fraud against a

21  *corporation,* the plaintiff bears an *even heavier* burden. In these instances, the plaintiff must "allege

22  the names of the persons who made the allegedly fraudulent representations, their authority to

23  speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann*

24  *v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

25

26  _____

27  [3]In both state and federal courts, notwithstanding the policy of liberal construction of
    pleadings, fraud and negligent misrepresentation claims must be pled with specificity. As to
    California law, see, e.g., *Lazar v. Superior Court;* 12 Cal.4th 631, 645 (1996).

28

Judged by ordinary pleading standards, plaintiff's allegations of negligent misrepresentation do not even pass muster. But evaluated in light of the apposite, heightened pleading standards, plaintiff's allegations are woefully inadequate. In truth, plaintiff fails adequately to allege any of the essential elements, much less all of them, as she must. For example, plaintiff does not even allege a misrepresentation of a past or existing material fact. Rather, she merely says someone employed by United "led her to believe" something.  FAC at ¶45. Being "led to believe" something is several steps removed from being the target of a specific, affirmative factual misrepresentation.

Since plaintiff does not allege that a particular United representative made a specific misrepresentation of fact, it follows that she has failed to allege that the representative had knowledge of the falsity of the representation. Also missing is any allegation that the anonymous employee *intended* to induce reliance upon the unspecified misrepresentation that he or she made. Certainly, there are no allegations concerning "the who, what, when, where, and how of the misconduct charged."  These are, each and all, shortcomings that render plaintiff's second cause of action for negligent misrepresentation fatally deficient.

**C.   Plaintiff's Fifth Cause of Action Fails to State Facts Sufficient to State An Actionable Claim for Intentional Infliction of Emotional Distress**

In her fifth cause of action, plaintiff purports to state a claim for intentional infliction of emotional distress ("IIED"). This claim, like plaintiff's inadequate claim for negligent misrepresentation, should be dismissed because plaintiff has failed to allege - and cannot in good faith allege - the requisite elements of the tort.

The elements of the tort of IIED are:

> outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiffs suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Trerice v. Blue Cross of Cal.,* 209 Cal.App.3d 878, 883, 257 Cal.Rptr. 338 (1989).

///

Memorandum of Points & Authorities in Support of Motion to Dismiss Plaintiff's First Amended Complaint
Case No:  CV 10-06131-BRO(FMOx)

Among other things, plaintiff cannot surmount the very first hurdle - that of alleging (much less ultimately proving) "outrageous" conduct on the part of United. As the court held in *Cochran v. Cochran,* 65 Cal.App.4th 488, 496, 66 Cal.Rptr.2d 337 (1998):

> In evaluating whether the defendant's conduct was outrageous, it is 'not ... enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'

*Id.,* quoting Restatement (Second) of Torts, § 46, com.d, p. 73.

It has been observed that "[t]here is virtually unanimous agreement that ... ordinary defendants are not liable for mere insult, indignity, annoyance, or even threats, where the case is lacking in other circumstances of aggravation." *Yurick v. Superior Court,* 209 Cal.App.3d 1116, 1128, 257 Cal.Rptr. 665 (1989).

Accordingly, it is generally held that there can be no recovery for mere profanity, obscenity, or abuse, without circumstances of aggravation, or for insults, indignities or threats which are considered to amount to nothing more than mere annoyances. The plaintiff cannot recover merely because of hurt feelings. *Id.,* citing *Prosser* & *Keeton on Torts* (5th ed. 1984) § 12, pp. 59-60 and *Cole v. Fair Oaks Fire Protection Dist.,* 43 Cal.3d 148, 155, 729 P.2d 743, 233 Cal.Rptr. 308 (1987).

As the Ninth Circuit has explained, the standard for what constitutes "outrageous" conduct - required for an IIED claim - is "extremely difficult to meet." *Wallis v. Princess Cruises, Inc.,* 306 F.3d 827, 842 (9th Cir. 2002). In *Wallis,* for example, the defendant cruise ship company's employee was alleged to have said, within earshot of the plaintiff, that her husband, who had fallen overboard, had probably been sucked up under the ship and his body chopped up by the propellers of the ship's engine. The Court of Appeals held this was conduct which was *not* outrageous.

In the instant case, plaintiff adverts to "brusque" treatment (FAC at ¶64), being asked to "wait in a very long line" (*id.*) and to take "a flight four hours later" than planned (*id.*). She also alleges that she was "met with rudeness and hostility" and "sworn at" when asked to leave a United office. (*Id.* at ¶67). Nor is the mere mention of the word "outrageous" (*id.* ¶¶ 66, 69) enough to meet the essential pleading requirements.

At most, plaintiff's allegations describe conduct which (if true) is unkind, uncompassionate and perhaps even rude. But, they fall far short of describing conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community" - in other words, that which is essential in order state an actionable claim for IIED.  Compare *Schneider v. TRW, Inc.,* 938 F.2d 986, 992-993 (9th Cir. 1991) (supervisor screamed, yelled, and made threatening gestures while criticizing the plaintiffs job performance, not "outrageous"); *Thomas v. Douglas,* 877 F.2d 1428, 1434-1435 (9th Cir. 1989) (police department failed to protect the plaintiff police officer from another officer's threats to render the plaintiff's "ass" into "grass" in retaliation for reporting an officer's misconduct, not "outrageous").

As the Ninth Circuit noted in its decision in this case, taking the complaint as true and in the light most favorable to the plaintiff, it was apparent that "much of the alleged injury was due to insensitive treatment." *Gilstrap, supra,* 705 F.3d at 1010-1011. As such, the court of appeals questioned "whether a court applying California law will hold that state law provides a tort remedy for such largely dignitary injuries." *Id.* at 1011.

Plaintiff's IIED claim also fails for lack of sufficient - or really any – allegations that she suffered "severe" or "extreme" emotional distress. "Severe emotional distress means ... emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Girard v. Ball,* 125 Cal.App.3d 772,787-788,178 Cal.Rptr. 406 (1981), internal citation omitted. Yet, here, though she repeats the conclusory phrase emotional pain and suffering" (FAC at ¶70) and refers vaguely to being "pressed to her physical and emotional limits"(*id.* at ¶68), there are no *factual* allegations the sort of severe or extreme emotional distress essential in order successfully to state a claim for IIED.

**D.    Plaintiff's Sixth Cause of Action Fails to State Facts Sufficient to State An Actionable Claim for Negligent Infliction of Emotional Distress**

Plaintiffs sixth cause of action is one in which she tries to state a claim for negligent infliction of emotional distress ("NIED"). NIED does not exist as an independent tort. *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 984-985, 25 Cal.Rptr.2d 550 (1993). Rather, NIED is simply a "form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply." *Huggins v. Longs Drug Stores California, Inc.,* 6 Cal.4th 124, 129 (1993).

As a general matter, "there is no duty to avoid negligently causing emotional distress to another ...." *Potter; supra,* 6 Cal.4th at 984. Therefore, "unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of *some other legal duty* and the emotional distress is proximately caused by that breach of duty." *Id.* at 985, emphasis added. Here, it is unclear what legal duty plaintiff maintains United owed and breached.

Moreover, like her attempt to state an IIED claim, plaintiff fails to state a claim for NIED because she has not alleged that she suffered "serious" emotional distress. After all, a plaintiff may only recover for emotional distress that is serious. *Molien v. Kaiser Foundation Hospitals,* 27 Cal.3d 916, 929-930, 167 Cal.Rptr. 831 (1980). Serious emotional distress is such that "a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Id.* at 928, 167 Cal.Rptr. 831. In this instance, no such allegations have been - or in good faith could be - proffered.

///

///

///

///

///

///

12

**V.      CONCLUSION**

From her FAC, as with her original complaint, it is evident that, with the sole exception of an ordinary negligence claim, plaintiff has not stated - and cannot in good faith state - actionable claims against United. Accordingly, all her claims, save for the fourth cause of action, should now be dismissed.

Dated:  September 10, 2013                    CODDINGTON, HICKS & DANFORTH


By: /s/ *Richard G. Grotch*
                                         Richard G. Grotch
                                         Attorneys for Defendant
                                         UNITED AIR LINES, INC.